**In re FARNER, BORING & TUNNELING, INC., Debtor.**

**Bankruptcy No. 3–82–01613.**

United States Bankruptcy Court, E.D. Tennessee.

Dec. 2, 1982.

Daniel, Claiborne & Lewallen, Glen R. Claiborne, David L. Buuck, Knoxville, Tenn., for James R. Lones and James W. White.

R.M. Child, Knoxville, Tenn., for debtor-in-possession.

MEMORANDUM AND ORDER ON MOTION TO DISMISS VOLUNTARY PETITION OR IN THE ALTERNATIVE TO REMAND TO THE KNOX COUNTY CHANCERY COURT

CLIVE W. BARE, Bankruptcy Judge.

This Memorandum addresses a motion to dismiss the voluntary chapter 11 petition of the debtor corporation. The movants, James W. White and James R. Lones, describe themselves as "the majority shareholders" in their motion. The voluntary petition filed October 22, 1982, is signed by

Frank Farner as president of the debtor. The movants insist that the filing of the petition was unauthorized by the debtor's directors and shareholders. In opposition to the movants, the attorney for the debtor contends that Farner is the sole shareholder of the debtor corporation and that denial of the motion is in the best interest of creditors and of the corporation itself.

## I

The corporate charter of the debtor was filed with the Secretary of State on May 16, 1979, according to the minutes of the first meeting of the corporation, held on May 28, 1979. These minutes reflect that the following individuals were named as officers of the corporation and that they owned shares of stock in the percentages stated:

| | | |
|---|---|---|
| Franklin D. Farner | President | 51.0% |
| James W. Lones | Vice-President | 24.5% |
| James R. White | Secretary-Treasurer | 24.5% |

These three shareholders also declared themselves to be the directors of the corporation. A proposed set of by-laws was unanimously adopted.

The minutes of a special meeting held on June 9, 1980, reflect that the three directors were present and that they mutually agreed to modify the number of shares each owned in the corporation. Under the modification, Farner's ownership interest was reduced to 42.5% and White's was increased to 42.5%. The ownership interest of Lones was accordingly reduced to 15%. The minutes further recite:

By their signature to these minutes each of the above stockholders ratifies and affirms this modification . . . and the secretary is hereby instructed to issue the certificates in accordance herewith.

The only signature to the minutes is that of James R. White. Furthermore, the certificates of stock ownership were never executed.

On April 2, 1982, an agreement was reached among Farner, Lones, and White. The agreement, evidenced by a document entitled "Contract For Sale of Stock and Real Estate," provides in part that Farner

will pay $75,000.00 to White and $25,000.00 to Lones for their respective shares of stock in the corporation. The purchase price was to be paid on or before May 1, 1982, and White and Lones were to hold the stock certificates in trust until the purchase price had been paid in full. This contract recites that Farner and White each own 42½% of the shares of stock of the corporation and that Lones owns 15%. No payment toward the purchase price has been made by Farner.

A complaint naming Lones and White as defendants was filed by Farner on August 23, 1982, in the Knox County Chancery Court. Farner requested rescission of the April 2, 1982, Contract For Sale of Stock and Real Estate on the basis of mutual mistake. He also requested that the corporate assets be sold and corporate debts be paid upon completion of two outstanding jobs undertaken by the corporation. He further requested that Lones and White be restrained from interfering with the utilization of corporate assets being used in performance of the two outstanding projects or with any corporate agents or employees. At a show cause hearing, the chancellor announced his decision to issue a temporary injunction against Lones and White and to allow the corporation to complete the two unfinished projects. A written order issuing the injunction was never prepared for the chancellor's signature. However, the parties conducted themselves just as if the order had been prepared and entered. Lones and White did not learn until October 22, 1982, when they were informed by the chancellor, that no injunction was in force against them as of that date.

By letter dated October 14, 1982, Farner sent the following notice to Lones and White:

As President of Farner Boring and Tunneling, Inc., a special meeting of Stockholders and Directors is called for the purpose of determining the method of liquidation of assets belonging to the corporation so as to obtain best possible price and the application of the proceeds to the obligations of the company.

The meeting will be held on Thursday, October 21, 1982, at 4:00 p.m. in the offices of Child, O'Connor and Petty, Attorneys, on the 15th Floor of the Bank of Knoxville Building, located at the corner of Market and Church in Knoxville, Tennessee.

An attorney for Lones and White gave written notice on or about October 19, 1982, to Farner's attorney that his clients did not intend to attend the October 21st meeting. Their attorney further stated that the attendance of Lones or White would violate the chancellor's order restraining them from interfering with the operation of the corporation.

The minutes of the October 21st meeting state that Farner, "the only certain shareholder of said corporation," declared the positions of the corporate directors vacated and elected himself and two other individuals as directors. These minutes further reflect that counsel was retained to file a chapter 11 petition on behalf of the corporation pursuant to a corporate resolution.

On October 22, 1982, notice of a special meeting to be held on October 28th was sent to Farner by the attorney for Lones and White, pursuant to Article II, Section 3, of the corporate by-laws.[1] The stated purpose of the special meeting was to elect new directors, to discharge Farner as president of the corporation, and to consider withdrawal of the chapter 11 petition.

Farner, Lones, White, and their attorneys attended the October 28th meeting. Farner questioned the validity of the call of the meeting, the authority of those who called it, and whether either Lones or White was a shareholder of the debtor. Lones and White announced that they were nominating and voting for themselves and Irene B. Reed as directors of the corporation. The "new directors" voted to retain counsel to petition the bankruptcy court to dismiss the voluntary chapter 11 petition previously filed October 22, 1982.

1. This provision authorizes a majority of the board of directors to call a special meeting in

II

The only issue presently before the court is whether the voluntary petition was filed pursuant to a valid corporate resolution. This issue must be decided in favor of the movants in this case.

Article IV, Section 2 of the corporation's by-laws does authorize the president of the corporation to sign certificates, contracts, and other instruments "as authorized by the Board of Directors and stockholders." However, the corporate resolution authorizing the filing of the debtor's petition is not a resolution of the legitimate directors of the corporation.

Article II, Section 3 of the debtor's by-laws recites in part: "Business transacted at all special meetings shall be confined to the objects in the call." The stated purpose in the call for the special meeting of October 21st was to determine how to maximize proceeds from the liquidation of corporate assets and appropriate those proceeds against corporate debts. The election to replace Lones and White as directors of the corporation violated the corporate by-laws and is invalid. Clearly, Farner could not have been authorized to file the chapter 11 petition on behalf of the corporation by the resolution of directors who were elected illegally.

Tenn.Code Ann. § 48–808(4) (1979) enacts:

The vote of a majority of the directors present at a meeting at which a quorum is present shall be the act of the board, unless the vote of a greater number is required by chapter 1 through 14 of this title, the charter or the bylaws.

According to Article III, Section 6 of the by-laws, "[a] quorum at all meetings of the Board of Directors shall consist of a majority of the whole Board . . . ." There were three members of the board of directors for the corporation when the special meeting was commenced on October 21st, but only one of them, Farner, was present. In the

the absence of the president of the corporation.

absence of a quorum of the board of directors, no action could be taken. Farner could not have singularly enacted a valid corporate resolution. *In re Autumn Press, Inc.,* 20 B.R. 60 (Bkrtcy.D.Mass.1982).

 The motion to dismiss the October 22, 1982, chapter 11 voluntary petition is granted.[2]

IT IS SO ORDERED.

**2.** On November 11, 1982, an involuntary petition under chapter 7 of title 11 of the United States Code was filed against the debtor. The dismissal of this chapter 11 case will in no way affect the chapter 7 case.